

# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105



HENRY McMASTER
Governor

MICHAEL WISE
Acting Director

July 20, 2022

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
HOUSTON CASUALTY COMPANY
c/o National Registered Agents, Inc.
2 Office Park Court, Suit 103
Columbia, SC 29223-0000

Dear Sir:

On July 20, 2022, I accepted service of the attached Summons, Complaint, Request for Production and Request for Admissions on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to spurvis@doi.sc.gov.** When replying, please refer to File Number 189766, Trident Construction Service, LLC v. HOUSTON CASUALTY COMPANY, 2022-CP-10-03207.

By:

Gwendolyn Fuller McGriff

Gwendolyn  McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Clinton T. Magill
       46A State Street
       Charleston, SC   29401

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | |

| | | |
|---|---|---|
| TRIDENT CONSTRUCTION SERVICES, LLC, | ) | Case No.: 2022-CP-10-_____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| HOUSTON CASUALTY CO., PREMIER | ) | |
| EXTERIORS, LLC, and GRAHAM- | ) | **SUMMONS** |
| HODGE ASSOCIATES, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

TO:  THE DEFENDANTS NAMED ABOVE:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your written response to the said Complaint on the subscribers at the law office Epting & Rannik, LLC, 46A State Street, Charleston, South Carolina 29401, within  thirty (30) days after the date of service hereof, exclusive of the day of service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

/s/ Clinton T. Magill
Clinton T. Magill, Esq.
SC Bar # 102770
EPTING & RANNIK, LLC
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
ctm@epting-law.com

s/ Jaan G. Rannik
Jaan G. Rannik, Esq.
SC Bar # 103014

1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

EPTING & RANNIK, LLC
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
jgr@epting-law.com

*ATTORNEYS FOR PLAINTIFF*

Charleston, SC
July 15, 2022

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

STATE OF SOUTH CAROLINA  )        IN THE COURT OF COMMON PLEAS
                          )        FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON      )

TRIDENT CONSTRUCTION        )
SERVICES, LLC,              )      Case No.: 2022-CP-10-_____
                Plaintiff,  )
                            )
v.                          )      COMPLAINT
HOUSTON CASUALTY CO., PREMIER )    (DECLARATORY JUDGMENT
EXTERIORS, LLC, and GRAHAM- )      FOR COVERAGE AND INSURER
HODGE ASSOCIATES, INC.,     )      MISCONDUCT)
                            )
                            )
                Defendants. )

## PARTIES AND JURISDICTION

1.  Trident Construction Services, LLC ("Trident") is a business organized under the laws of South Carolina and doing business in Charleston County, South Carolina.

2.  Houston Casualty Co. ("HCC") is an insurance company organized under the laws of Texas and doing business in Charleston County, South Carolina.

3.  Premier Exteriors, LLC ("Premier") is a South Carolina corporation with its principal office in Charleston, South Carolina.

4.  Graham-Hodge Associates, Inc. ("Graham-Hodge") is a South Carolina Corporation with its offices located at 25 Littlejohn Glen Court, Greenville, Greenville County, South Carolina.

5.  This Court has jurisdiction over the parties and the subject matter of the dispute, and venue is appropriate in Charleston County.

## FACTUAL BACKGROUND

6.  In 2017, Trident was hired by Gadsden Development Company ("GDC") to construct The Gadsden, a condominium development in downtown Charleston, South Carolina ("the Project").

7.  HCC issued a project-specific insurance policy, number H16PC30763-00, which provided coverage from December 28, 2016 to January 10, 2019 ("the Policy"). **(Exh. A)**

8.  The Policy extends coverage upon its terms to all enrolled contractors and subcontractors.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

9.    Trident hired subcontractors to perform the work of building the Project, in particular Premier and Graham-Hodge.

10.   Trident, Premier, and Graham-Hodge were all enrolled contractors or subcontractors and named insureds.

11.   The Project was given a Temporary Certificate of Occupancy on November 1, 2018, with the Final Certificate of Occupancy delivered upon final certification by the Board of Architectural Review ("BAR"), which occurred on January 10, 2019.

12.   The project was complete within the original policy period of December 28, 2016 to December 28, 2018; the final certification was not issued because of an administrative detail required for BAR certification and completely unrelated to the construction and completion of the project.

13.   A loss was reported to HCC on October 3, 2019, caused by a plumbing leak.

14.   HCC attempted to deny the loss on the basis that the final certification was issued after the original policy completion date.

15.   HCC, when forced by the facts, paid the loss.

16.   Water intrusion was discovered at the Project, causing property damage to the exterior shell and other elements of the building.

17.   Trident incurred covered costs for repairing the buildings as did Premier and Graham-Hodge.

**FOR A FIRST CAUSE OF ACTION**
**(As to HCC, Breach of Insurance Contract and Bad Faith)**

18.   The allegations of the preceding paragraphs are incorporated as if fully restated in this paragraph.

19.   HCC next claimed the Policy excluded coverage for the repairs of the water intrusion because of the "Your Work" exclusion.

20.   **Exhibit B** is a true and correct copy of the position asserted by HCC on June 8, 2021.

21.   HCC conceded and now concedes the "Wrap Up Program Change Endorsement with General Aggregate Reinstatement" at § 3 withdrew the "Your Work" exclusion from the Policy. **Exh. C**.

22.   HCC then took the position that the damage in question was not "property damage" and is not covered under the Policy, despite the Policy being a project-specific policy intended to cover losses as described above.

4

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

23. **Exhibit D**, November 23, 2021, is a true and correct copy of the position then and now asserted by HCC.

24. On September 15, 2020, Trident submitted its claim in the amount of $475,615.09 for its efforts to repair the Project because of the water intrusion.

25. HCC has paid only $91,658.69.

26. Trident is owed $440,525.70, which includes including interest at the S.C. statutory rate and giving credit for HCC's payment of $91,658.69.

27. Trident is owed $103,051.85 on account of the work of Premier and $35,000.00 on account of the work by Graham-Hodge for which HCC is liable.

28. Under South Carolina law, an insured's attorney's fees and costs in pursuit of a declaration of coverage are paid by the insurer. *State Auto Prop. & Cas. Co. v. Raynolds*, 357 S.C. 219, 592 S.E.2d 633, 637 (2004) ("It is well-settled in South Carolina that when a defendant insured prevails in a declaratory judgment action, the insured is entitled to recover attorney's fees.").

29. Trident has incurred and will incur substantial attorneys' fees.

30. HCC's actions are bad faith for which Trident is entitled to recover punitive damage.

**FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment as to All Defendants)**

31. The allegations of the preceding paragraphs are incorporated as if fully restated in this paragraph.

32. The Policy provides coverage for above stated.

33. HCC is obliged to provide payment for the amounts herein stated.

34. Trident requests this Court adjudicate the respective rights and obligations of the party as relates to the policy, repair costs incurred, and claims by Premier and Hodges.

WHEREFORE, Trident prays for judgment against the Defendants the sum of $578,577.55 in actual damages plus punitive damages, for its further interest at the legal rate and attorney's fees, and other legal declaratory and equitable relief as the Court deems just and appropriate.

**[signature on following page]**

5

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Respectfully submitted:

/s/ Clinton T. Magill
Clinton T. Magill, Esq.
SC Bar # 102770
EPTING & RANNIK, LLC
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
ctm@epting-law.com

s/ Jaan G. Rannik
Jaan G. Rannik, Esq.
SC Bar # 103014
EPTING & RANNIK, LLC
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
jgr@epting-law.com

*ATTORNEYS FOR PLAINTIFF*

Charleston, SC
July 15, 2022

6

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

# EXHIBIT A

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207



# HOUSTON CASUALTY COMPANY
## ADMINISTRATIVE OFFICES
### 13403 NORTHWEST FREEWAY
### HOUSTON, TX  77040

THIS POLICY CONSISTS OF:
- DECLARATIONS
- COMMON POLICY CONDITIONS
- COVERAGE FORMS
- APPLICABLE ENDORSEMENTS

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

## HOUSTON CASUALTY COMPANY

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

BY: _____          _____
        PRESIDENT                                    SECRETARY

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

# COMMON POLICY DECLARATIONS

| COVERAGE IS PROVIDED BY<br>**Houston Casualty Company**<br>**13403 Northwest Freeway, Houston, TX 77040** | POLICY NUMBER<br><br>RENEWAL of POLICY NO: | H16PC30763-00 |
|---|---|---|

| | |
|---|---|
| Named Insured: | Gadsden Development Company 1 LLC |
| Mailing Address: | 299 East Bay Street<br>Charleston, SC 29401 |
| Policy Period: | From:    12/28/2016        To:        12/28/2018<br>**at 12:01 A.M., Standard Time at your mailing address shown above.** |
| Broker: | R-T Specialty - Burbank<br>3900 West Alameda Avenue, 21st Floor<br>Burbank, CA 91505 |

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS INDICATED BELOW.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $244,874 |
| **TOTAL PREMIUM** | $244,874 |
| Policy Fee | |
| Engineering Fee | $2,500 |
| **POLICY TOTAL**<br>(Policy Total shown is payable at inception) | $247,374 |

| | |
|---|---|
| Forms and Endorsements: | See HPC 030 02 09 11 – Schedule of Forms and Endorsements |

HPC 010 01 09 11

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER: H16PC30763-00
HPC 030 02 09 11

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following are the forms attached to and forming a part of the policy at inception:

| | | Policy Jacket |
|---|---|---|
| HPC 010 01 | 09 11 | Common Policy Declarations HCC |
| IL 0017 | 11 98 | Common Policy Conditions |
| HPC 030 02 | 09 11 | Scheduled Forms and Endorsement |
| HPC 040 05 | 07 11 | First Named Insured |
| IL 0021 | 05 04 | Nuclear Energy Liability Exclusion |
| HPC 030 04 | 07 13 | Service of Suit HCC |
| CG 0062 | 12 02 | War Liability Exclusion |
| CG 2107 | 05 14 | Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included |
| CG 2175 | 01 15 | Exclusion of Certified Acts Of Terrorism And Exclusion of Other Acts of Terrorism Committed Outside The United States |
| CG 2191 | 01 06 | Exclusion of Terrorism Involving NBC Acts of Terrorism |
| HPC 020 02 | 03 13 | Commercial General Liability Coverage Part Supplemental Declarations |
| CG 0001 | 12 07 | Commercial General Liability Coverage Form – Occurrence |
| HPC 040 04 | 11 11 | Definition of Employee Amendment |
| HPC 050 07 | 02 12 | Exclusion - Asbestos |
| HPC 050 06 | 07 11 | Exclusion - Arsenic |
| Manuscript | | Exclusion - Wrap Up Cross Suits With Exception to Owner and GC |
| HPC 050 03 | 07 11 | Exclusion - Lead |
| HPC 040 06 | 03 13 | Intellectual Property Amendment |
| HPC 050 02 | 02 12 | Exclusion - Sulfates |
| HPC 040 08 | 07 11 | Minimum Earned Premium and Audit Premium Endorsement |
| CG 2135 | 10 01 | Exclusion – Coverage C – Medical Payments |
| CG 2147 | 12 07 | Employment-Related Practices Exclusion |
| CG 2167 | 12 04 | Fungi or Bacteria Exclusion |
| CG 2186 | 12 04 | Exclusion – Exterior Insulation And Finish Systems |
| CG 2196 | 03 05 | Silica or Silica-Related Dust Exclusion |
| CG 2165 | 12 04 | Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception |
| CG 2012 | 05 09 | Additional Insured – State or Political Subdivisions – Permits |
| CG 2018 | 11 85 | Additional Insured – Mortgagee, Assignee Or Receiver |
| Manuscript | | Wrap up Program Change Endorsement with Reinstatement of the General Aggregate Limit |
| HPC 080 01 | 11 11 | Deductible Liability Insurance |
| HPC 040 14 | 12 11 | Supplementary Payments – Amended (Supplementary Payments Reduce Limits of Insurance) |
| CG 2234 | 07 98 | Exclusion – Construction Management Errors and Omissions |
| CG 2280 | 07 98 | Exclusion - Contractors Professional - Liability |
| CG 2301 | 12 04 | Exclusion – Real Estate Agents Errors Or Omissions |
| CG 2417 | 10 01 | Contractual Liability – Railroads |
| CG 2010 | 07 04 | Additional Insured-Owners, Lessees Or Contractors-Scheduled |
| CG 2028 | 07 04 | Additional Insured – Lessor of Leased Equipment |
| CG 2037 | 07 04 | Additional Insured – Owner, Lessees Or Contractors – Completed Operations |
| CG 2404 | 05 09 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |

| HPC 060 02 | 02 12 | Primary and Non-Contributing Insurance |
|---|---|---|
| HPC 040 11 | 09 11 | Limited Coverage – Repair Work |
| HPC 060 04 | 10 11 | Expanded Bodily Injury Definition |
| HPC 060 01 | 07 11 | Notice and Knowledge of an Occurrence |
| HPC 060 05 | 10 11 | Unintentional Failure to Disclose Hazards |
| Manuscript | | Amendment of Other Insurance |
| Manuscript | | Modified Cancellation Endorsement |
| Manuscript | | Modified Definition of Products-Completed Operations Hazard |
| Manuscript | | Definition of Construction Cost |

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

HPC 030 02 09 11     ☐

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

HPC 040 05 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The Named Insured is completed to read as follows:

Gadsden Development Company 1 LLC, parent companies, subsidiaries, associated and/or affiliated organizations, or successors as now exist or may hereafter be acquired or formed, and any other corporation or public organization which Gadsden Development Company 1 LLC owns, operates or controls, including the interest as successor to any corporation or other public entity acquired.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 040 05 07 11                                                                                                      Page 1 of 1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

INTERLINE
IL 00 21 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

---

IL 00 21 05 04               © ISO Properties, Inc., 2001               Page 1 of 2   □

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 05 04

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

HPC 030 04 07 13

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

As used in this endorsement, the "Company" refers to Houston Casualty Company.

This applies in jurisdictions where the Company is not an admitted insurer.

It is agreed that in the event of the Company's failure to pay the amount claimed to be due hereunder, the Company, at the request of the INSURED, will submit to the jurisdiction of a Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. Nothing in this Endorsement constitutes or should constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the INSURED or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the President of the Houston Casualty Company in care of the General Counsel, at 13403 Northwest Freeway, Houston, TX, 77040, as the person to whom the said officer is authorized to mail such process or true copy thereof.

It is further understood and agreed that service of process in such suit may be made upon ALEXANDER LUDLOW, Secretary, at 13403 Northwest Freeway, Houston, TX, 77040, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused,  arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.  Medical payments due to war are now subject to Exclusion **g.** of  Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 75 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2015

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015    CG 21 75 01 15

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 91 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

      **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   **b.** When one or both of the following applies:

      **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

CG 21 91 01 06 © ISO Properties, Inc., 2004 Page 1 of 1 □

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

| | |
|---|---|
| **POLICY NUMBER:**    H16PC30763-00 | **EFFECTIVE DATE:**    12/28/2016 to 12/28/2018 |

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $ 2,000,000 | |
| General Aggregate Limit (Other than Products – Completed Operations) | $ 2,000,000 | |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 50,000 | Any One Premises |
| Medical Expense Limit | $ Excluded | Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below and Coverage B of this insurance does not apply to "personal and advertising injury" caused by an offense which occurs before the Retroactive Date, if any, shown below:
**Retroactive Date:** NA in New York

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:
☐ Individual    ☐ Partnership    ☐ Joint Venture    ☐ Limited Liability Company    ☒ Other    ☐ Trust

Business Description:    Ground up construction of one concrete and steel 4-story building with 76 condo units

## PREMIUM

| Classification | Code No. | Rate | Premium Basis | Exposure | Premium |
|---|---|---|---|---|---|
| | | $8.29 | $1,000 Construction Cost | $29,538,455 | $244,874 |
| | | | | | |
| | | | Total Advance Premium | | $244,874 |

Forms and Endorsements:  See HPC 030 02 09 11 – Schedule of Forms and Endorsements

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006   □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

    This insurance does not apply to:

    **a. Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    **b. Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c. Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

    **d. Criminal Acts**

    "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **e. Contractual Liability**

    "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    **f. Breach Of Contract**

    "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

    **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

    "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

    **h. Wrong Description Of Prices**

    "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

    However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

    **j. Insureds In Media And Internet Type Businesses**

    "Personal and advertising injury" committed by an insured whose business is:

        **(1)** Advertising, broadcasting, publishing or telecasting;

        **(2)** Designing or determining content of websites for others; or

 © ISO Properties, Inc., 2006 CG 00 01 12 07    □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    **a.** All expenses we incur.

    **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

    **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    **b.** This insurance applies to such liability assumed by the insured;

    **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    **f.** The indemnitee:

        **(1)** Agrees in writing to:

            **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

            **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

            **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        **(2)** Provides us with written authorization to:

            **(a)** Obtain records and other information related to the "suit"; and

                        © ISO Properties, Inc., 2006                        CG 00 01 12 07          □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006           □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006
CG 00 01 12 07    □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

  **c.** All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

    **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

  provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006
CG 00 01 12 07    □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
HPC 040 04 11 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFINITION OF EMPLOYEE AMENDMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section **V – Definitions,** 5. "Employee" is deleted and replaced by the following:

5. "Employee" includes "leased worker" and "temporary worker".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**HPC 040 04 11 11**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 050 07 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage A – **Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

"Bodily injury" or "property damage" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage B – **Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

"Personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

**C.** The following definition is added to the **Definitions** Section:

"Asbestos" means the material in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 050 06 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ARSENIC

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Arsenic**

"Bodily injury" or "property damage" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "arsenic".

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Arsenic**

"Personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "arsenic".

**C.** The following definition is added to the **Definitions** Section:

"Arsenic" means the element in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
**Manuscript**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - WRAP-UP CROSS SUITS WITH EXCEPTION TO OWNER OR GENERAL CONTRACTOR

This endorsement modifies insurance under the following:

**COMMERCIAL GENERAL LIABILTY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

The following exclusion is added to Paragraph **2.,  Exclusions** of **SECTION 1 – COVERAGES A –  BODILY INJURY AND PROPERTY DAMAGE      LIABILITY** and Paragraph **2., Exclusions** of **SECTION 1 – COVERAGE B – PERSONAL AND                ADVERTISING INJU-RY:**

This insurance does not apply to:

"Property damage" arising from claims or "suits" brought by any Named Insured identified in the declarations or policy as a Named Insured against any other Named Insured identified in the declarations or policy as a Named Insured. This exclusion does not apply to the Owner or General Contractor.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 050 03 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Lead**

"Bodily injury" or "property damage" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead".

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Lead**

"Personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead".

**C.** The following definition is added to the

**Definitions** Section:

"Lead" means the element in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 050 03 07 11           Includes copyrighted material of Insurance Services Office, Inc.,           **Page 1 of 1**
with its permission

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 040 06 03 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INTELLECTUAL PROPERTY AMENDMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I.   With respect to the coverage provided by this endorsement, Item **14.** of **SECTION V – DEFINITIONS** is deleted in its entirety and replaced with the following:

**14.** "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lessor;

   **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   **e.** Oral or written publication of material that violates a person's right of privacy.

II.  Under **SECTION I – COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS**, exclusion **i. Infringement of Copyright, Patent, Trademark or Trade Secret**, is deleted in its entirety and replaced with the following:

   **i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas**

   "Personal and Advertising Injury" arising out of:

   **a.** Infringement, disparagement, dilution, diminishment of or damage to:

      **(1)** Copyright, slogan or title;

      **(2)** Patent;

      **(3)** Trademark, service mark, collective mark, or certification mark, including but without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

      **(4)** Trade secret;

      **(5)** Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service;

      **(6)** Advertising ideas, concepts, campaigns, or style of doing business; or

      **(7)** Any other intellectual property rights recognized or implied by law;

   **b.** False designation of the origin of a good, product or service.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 040 06 03 13          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 1
                                               with its permission

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 050 02 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - SULFATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,
Exclusions** of Section I **– Coverage A – Bodily
Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Sulfates**

"Bodily injury" or "property damage" arising out
of the actual, alleged, suspected or threatened
ingestion of, inhalation of, contact with, expo-
sure to, existence of, or presence of "sulfates".

**B.** The following exclusion is added to Paragraph **2.,
Exclusions** of Section I **– Coverage B – Person-
al And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Sulfates**

"Personal and advertising injury" arising out of
the actual, alleged, suspected or threatened in-
gestion of, inhalation of, contact with, exposure
to, existence of, or presence of "sulfates".

**C.** The following definition is added to the
**Definitions** Section:

"Sulfates" means the acid in any form or combi-
nation.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 040 08 07 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM AND AUDIT PREMIUM

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Item **5.** Of section **A. Cancellation** of the **Common Policy Conditions** is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

a. If we cancel, the refund will be pro rata.

b. Cancellation at the request of the first Named Insured:

This policy is subject to a Minimum Earned Premium which is 25% of the premium for this policy as shown in the applicable Coverage Part(s) Declarations unless scheduled here otherwise **100%.** This Minimum Earned Premium is the least amount of premium we shall retain as earned premium, regardless of the term. If the first Named Insured cancels, the refund will be determined as follows:

1) If at the time of cancellation the earned premium is greater than the Minimum Earned Premium, the refund will be 90% of the pro rata return.

2) If at the time of cancellation the earned premium is equal to or less than the Minimum Earned Premium, the refund will be the premium paid in excess of the Minimum Earned Premium.

3) If the policy is a project specific policy with a policy term in excess of one year, the pro rata return premium will be calculated based on the number of days for which the policy was in force, divided against the date when the policy becomes fully earned.

Cancellation for non-payment of premium will be considered cancellation at the request of the first Named Insured.

B. If this policy is subject to premium audit, paragraph **b.** of item **5. Premium Audit** in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is replaced by the following:

b. Premium shown in the **Commercial General Liability Coverage Part Supplemental Declarations** as Advance Premium is a deposit premium only which will be credited toward the amount of earned premium. The Advance Premium is the minimum premium for the policy period, is payable in full at the inception of coverage and is not refundable. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured.

This policy has a minimum amount of premium that applies to the term of insurance as listed on the policy. Unless otherwise stated, the minimum premium is equal to the advance and deposit premium as shown in the declarations, adjusted for subsequent endorsements. In the event that audit premiums are greater than the advance and deposit premium, the additional premium is due upon notice to the insured. If audit premiums are less than the deposit, then the Company shall retain the advance and deposit premium.

The minimum term premium is **100%** of the advanced and deposit premium as stated in the policy declarations.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**C.** If this policy is written with a designated construction project endorsement, the policy will be fully earned and no premium will be returned at the time of "substantial completion" or 12 months after inception of the policy, whichever occurs earlier.

**D.** As used in this endorsement the term "substantial completion" means whichever of the following occurs first:

    **1)** The date of the final inspection of the construction project by the applicable public agency.

    **2)** The date of recordation of a valid notice of completion

    **3)** The date of use or occupancy of the construction project or improvement.

    **4)** One year after termination or cessation of work on the construction project.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

Includes copyrighted material of Insurance Services Office, Inc., with its permission
HPC 040 08 07 11

POLICY NUMBER:  H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| **Description And Location Of Premises Or Classification:** |
| --- |
| Any Location or Job Site |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** – Supplementary Payments:

   **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

  "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

                    © ISO Properties, Inc., 2003

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

POLICY NUMBER: H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 05 09**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** Any state or governmental agency or subdivision or political subdivision for whom during the policy period you and such state or governmental agency or subdivision or political subdivision have agreed in writing in a contract or agreement that such state or governmental agency or subdivision or political subdivision be added as an additional insured on your policy. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

2. This insurance does not apply to:

   a. "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER:  H16PC30763-00          **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**
Any mortgagee, assignee, or receiver when you and such mortgagee, assignee, or receiver have agreed in writing in a contract or agreement that such mortgagee, assignee, or receiver be added as an additional insured on your policy.

**Designation of Premises:**
299 East Bay Street
Charleston, SC 29401

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.
2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**CG 20 18 11 85**          Copyright, Insurance Services Office, Inc.,  1984          **Page 1 of 1**    □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
Manuscript

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WRAP UP PROGRAM CHANGE ENDORSEMENT WITH GENERAL AGGREGATE REINSTATEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **Project Name:**<br>The Gadsden |
| **Project Address:**<br>299 East Bay Street<br>Charleston, SC 29401 |
| **Project Description:**<br>Ground up construction of one concrete and steel 4-story building with 76 condo units. Including off-site staging and storage areas that are necessary or incidental to the covered project within 1,000 feet of the covered project. |
| **Project Sponsor:**<br>Gadsden Development Company 1 LLC |
| **Enrolled Professionals: EXCLUDED** |

1. **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement,** part **b. (1)** and **(2)** are deleted and replaced by the following:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project."

   (2) The "bodily injury" or "property damage" occurs during the policy period, except for "bodily injury" or "property damage" included in the "products-completed operations hazard". For "bodily injury" or "property damage" included in the "products-completed operations hazard" the

   "bodily injury" or "property damage" occurs during the policy period or within the "extended products-completed operations period"; ,

2. The following is added to **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement** part **b.**:

   (4) And with respect to the "products-completed operations hazard" only, the dwelling unit you construct obtains a final certificate of occupancy from the appropriate local governing body during the term of the policy to which this endorsement forms a part.

Manuscript

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

3. **Section I – COVERAGES, Coverage A. BODILY INJURY AND PROPERTY DAM-AGE, 2. Exclusions**, exclusions **j., k.** and **l.** are deleted.

4. The following exclusions are added to **SEC-TION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAM-AGE LIABILITY, 2.:**

    i. "Property Damage" to the "covered project". However this exclusion does not apply to "property damage" included within the "products-completed operations hazard"

    ii. "Property damage" to personal property in the care custody or control of any insured.

5. **SECTION I – COVERAGES, COVERAGE B., PERSONAL AND ADVERTISING INJU-RY LIABILITY**, Paragraph **b.** is deleted in it's entirety and replaced with the following:

    b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed at the "covered project" during the policy period.

6. **Section II – WHO IS AN INSURED, 2**. is amended to include the following:

    **e.** Your "enrolled contractors" only while performing duties related to the "covered project".

7. **SECTION III – LIMITS OF INSURANCE, 2. and 3. Are deleted and replaced with the following:**
    2. The General Aggregate Limit is the most we will pay for the sum of:
    a. Damages under Coverage **A**, ex cept damages because of "bodily injury" or "property damage" in cluded in the "products-completed operations hazard"; and
    b. Damages under Coverage **B**.

The General Aggregate Limit will be re-instated once at the midpoint of the poli-cy period.

    3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "prop erty damage" included in the "prod-ucts-competed operations hazard". The Products-Completed Operations Aggregate Limit applies to the entire policy period including the "extended products-completed operations peri-od" and does not reinstate.

8. The last paragraph of **SECTION III – LIMITS OF INSURANCE**, is deleted in its entirety.

9. "Covered Project" means the project de-scribed in this endorsement.

10. "Enrolled Contractors", mean a Named In-sured as well as the project owner, general contractor construction manager, program manager, contractors and subcontractors of every tier, who, prior to the commencement of their work on the "covered project" have completed the appropriate enrollment docu-ments for the "covered project". "Enrolled contractors" do not include any manufactur-ers or suppliers of materials or contractors or subcontractors engaged in any environ-mental or geotechnical work or any profes-sionals, or surveyors unless their names are listed in the Schedule of this endorse-ment.

11. "Extended products – completed operations period" means the period of the time allowed by any applicable statute of limitation or re-pose, or ten (10) years, whichever is less, for claims or "suits" to be brought against the insured.

12. Cancellation, non-payment of additional premi-um at audit, or non-cooperation with the audit process, or failure to provide requested en-rollment and 3rd party peer review documenta-tion will result in the removal of the Extended Products-Completed Operations coverage.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 080 01 11 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| Coverage | Basis of Deductible | Amount |
|---|---|---|
| Coverages A and B | Per Occurrence | $25,000 |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for Coverages A and B, however caused):

I.  Our obligation under Coverages A and B to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the schedule above. The limits of insurance applicable to Coverages A and B will be reduced by the amount of the stated deductible.

II. The deductible amounts stated in the Schedule apply as follows:

   A. **PER CLAIM BASIS –** if the deductible is on a per claim basis indicated above, the deductible amount applies:

      1. To all damages because of "bodily injury" sustained by one person, or

      2. To all damages because of "property damage" sustained by one person or organization, as a result of any one "occurrence".

      3. To "personal and advertising injury" sustained by one person or organization as the result of any one "occurrence".

   B. **PER OCCURRENCE BASIS –** if the deductible is on a per occurrence basis indicated above, the deductible amount applies to all damages because of "bodily injury", "property damage", or "personal and advertising injury" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence"

III. **LEGAL AND LOSS ADJUSTMENT EXPENSES**

   The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all legal and loss adjustment expenses.

IV. **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

   The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all payments made under SUPPLEMENTARY PAYMENTS - COVERAGES A and B.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**V.** The terms of this insurance, including those with respect to:

    **A.** Our right and duty to defend any claims or "suits" seeking those damages; and

    **B.** Your duties in the event of an "occurrence", claim, or "suit";

    apply irrespective of the application of the deductible amount.

**VI.** We may pay any or all of the deductible amount to effect the settlement of any claim or "suit", or pay legal and loss adjustment expenses, or make any payments under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B. Upon notification of the action taken, you shall promptly reimburse us for the deductible amount which has been paid by us.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

Includes copyrighted material of Insurance Services Office, Inc., with its permission       HPC 080 01 11 11

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 040 14 12 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUPPLEMENTARY PAYMENTS – AMENDED (SUPPLEMENTARY PAYMENTS REDUCE LIMITS OF INSURANCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B,** of **SECTION I – COVERAGES** is deleted in its entirety and replaced by the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

HPC 040 14 12 11                                    Page 1 of 2

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

    **(1)** Agrees in writing to:

        **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

        **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

        **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    **(2)** Provides us with written authorization to:

        **(a)** Obtain records and other information related to the "suit"; and

        **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" but will reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or supplementary payments, or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 040 14 12 11

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

COMMERCIAL GENERAL LIABILITY
CG 22 80 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

1. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

CG 22 80 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1          □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
CG 23 01 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – REAL ESTATE AGENTS OR BROKERS ERRORS OR OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

© ISO Properties, Inc., 2003

POLICY NUMBER: H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 24 17 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| Please provide railroad to be scheduled on. | 299 East Bay Street<br>Charleston, SC 29401 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER: H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person or organization for whom you are performing operations during the policy period when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. | 299 East Bay Street Charleston, SC 29401 |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

© ISO Properties, Inc., 2004

Page 1 of 1    □

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER:  H16PC30763-00

COMMERCIAL GENERAL LIABILITY
CG 20 28 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| Any person or organization for whom you are performing operations during the policy period when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

CG 20 28 07 04

© ISO Properties, Inc., 2004

Page 1 of 1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER:  H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| Any person or organization for whom you are performing operations during the policy period when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. | 299 East Bay Street<br>Charleston, SC 29401 |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

POLICY NUMBER: H16PC30763-00

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person Or Organization: |
| --- |
| Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that you will waive any right of recovery against such person or organization. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 060 02 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NON-CONTRIBUTING INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

| Name of Additional Insured Person(s) or Organization(s): | Location(s) of Covered Operations |
|---|---|
| Any person or organization for whom you have agreed in writing in a contract or agreement to be provide with primary and non-contributory status under this policy. | 299 East Bay Street<br>Charleston, SC 29401 |

A. The following is added to **Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** Paragraph 4:

   **4. Other Insurance**

   **d.** Notwithstanding the provisions of subparagraphs a, b, and c of this paragraph 4, with respect to the Entity shown above, it is understood and agreed that in the event of a claim or "suit" arising out of the Named Insured's negligence, this insurance shall be primary and any other insurance maintained by the Entity above shall be excess and non-contributory.

The Entity to whom this endorsement applies is:

Absence of a specifically named Entity above means that the provisions of this endorsement apply "as required by written contractual agreement with any Entity for whom you are performing work."

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 060 02 02 12      Includes copyrighted material of Insurance Services Office, Inc., with its permission      Page 1 of 1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 040 11 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED COVERAGE- REPAIR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance is extended for an additional period of time with respect to liability for "bodily injury" or "property damage" arising out of "repair work" performed by employees of the Named Insured.  The extension begins when the Designated Project or any part thereof has been put to its intended use or is occupied in whole or in part by any person or organization other than another contractor or subcontractor working on the same project, and ends at the earlier of:

**(a)** The expiration of the statute of repose applicable to claims or "suits" alleging defective construction, or

**(b)** Limited Coverage- Repair Work Expiration Period years: per state statute.

Work performed under this coverage extension does not apply to liability included in the "products-completed operations hazard".

With respect to this endorsement, the following definition applies:

1. "Repair work" means the repair, correction or replacement of "your work" which is performed after "your work" was originally completed.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 040 11 09 11                                              Page 1 of 1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 060 04 10 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPANDED BODILY INJURY DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section V - Definitions 3** is hereby deleted and replaced with the following:

**3.** "Bodily injury" includes bodily injury, sickness, disease, death, disability, and emotional distress (including therein mental anguish, mental injury, shock and humiliation) sustained by a person, including death resulting from any of these at any time.

However, emotional distress (including mental anguish, mental injury, shock and humiliation) are not covered as "bodily injury" if they are covered as items of damages under "Personal and Advertising Injury" or under other Coverages in this policy or endorsed thereon.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 060 01 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NOTICE AND KNOWLEDGE OF AN OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section IV – Commercial General Liability Conditions 2. a.** is deleted and replaced by the following:

2. Duties in the event of an Occurrence, Offense, Claim or Suit

  a. Knowledge of an "occurrence" by your agent, servant or "employee" is not considered knowledge by you unless your insurance manager or other designated person has received notice from your agent, servant or "employee." You, your insurance manager or any other person you designate, must see to it that we, or our authorized agents, are notified promptly of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

  (1) how, when and where the "occurrence" or offense took place;

  (2) the names and addresses of any injured persons and witnesses; and

  (3) the nature and location of any injury or damage arising out of the "occurrence" or offense.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

HPC 060 01 07 11          Includes copyrighted material of Insurance Services Office, Inc., with its permission          Page 1 of 1

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
HPC 060 05 10 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – Commercial General Liability Condi tions, item 6. Representations,** the following is added:

**d.** If you unintentionally fail to disclose any hazard existing at the inception date of this policy, we will not deny coverage under this Coverage Form because of such failure.  However, this provision does not affect our right to collect ad- ditional premium or exercise our right of cancel- lation or non-renewal.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
Manuscript

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE

This endorsement modifies insurance provided under the following:

**Section IV – Commercial General Liability Conditions 4. a.** is deleted and replaced by the following:

With respect to the coverage afforded to any Named Insured for "bodily injury", "property damage", "personal and advertising injury" and "medical expenses" arising out of the construction activities of the "covered project", this insurance is primary and shall apply before any other Commercial General Liability insurance, whether primary, excess contingent or on any other basis, available to a Named Insured on which the Named Insured is also a Named Insured.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
Manuscript

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MODIFIED CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

Common Policy Conditions Endorsement – IL 00 17 11 98

**Section A. Cancellation. Number 2.** is deleted and replaced by the following:

The Company agrees to provide continuous coverage to the Insureds for the term of this program and therefore waives its rights of cancellation except for one or more of the following reasons:

We may cancel this Coverage Part by mailing or delivering to the First Named Insured written notice of cancellation at least:

**a.**  30 days before the effective date of cancellation if we cancel for non-payment of premium or failure to provide requested enrollment and 3rd party peer review documentation; or

**b.**  60 days for repeated violations of 3rd party loss control (OSHA and State or Federal Safety Violations), with the ability to cure within the notice period.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
**Manuscript**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Definition 16.a. of SECTION V – DEFINITIONS, PRODUCTS-COMPLETED OPERATIONS HAZARD is deleted and replaced by the following modified as follows:

a. Includes all "bodily injury" and "property damage" arising out of the designated project and arising out of "your product" or "your work" except:

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
**Manuscript**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFINITION OF CONSTRUCTION COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMER-CIAL GENERAL LIABILITY CONDITIONS, 5. Pre-mium Audit:**

Construction cost is defined as the cost of all work including work let or sublet in connection with the Designated Project(s) including the cost of labor, materials and equipment furnished, used or delivered for use in the execution of the work.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGE**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

# EXHIBIT B



**TOKIO MARINE HCC**

Tokio Marine HCC – Casualty Group
801 South Figueroa, Suite 700
Los Angeles, CA 90017

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

June 8, 2021

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED; EMAIL; and USPS MAIL
VIA EMAIL TO:

Trident Construction Services, LLC
c/o Chris Burrell, Senior Project Manager
2245 Technical Parkway
North Charleston, SC 29419

Re:    The Gadsden, 299 East Bay St, Charleston, SC 29401 Project
       Named Insured:      Gadsden Development Company II, LLC
       Policy No.:          H16PC30763-00
       Effective Dates:     1/16/2017 to 12/28/2018
       Claim No.:           PWU-16-14787

## COVERAGE POSITION AND RESERVATION OF RIGHTS

Dear Mr. Burrell:

Tokio Marine HCC ("Tokio Marine") is handling this matter on behalf of Houston Casualty Company ("HCC"). On behalf of HCC, we write to respond to Trident Construction Services, LLC's ("Trident Construction") request for reimbursement of certain costs and fees that Trident incurred in connection with performing repair work on several of the units in the project known as "The Gadsden" in Charleston, South Carolina.

As you know, the claims at issue were brought by several homeowners who own units at the Gadsden. The homeowners alleged there were construction defects in their units, which led to water intrusion. Trident Construction repaired the defects in the construction of the buildings and repaired the damage caused by the water intrusion.

HCC issued the captioned commercial general liability policy to Gadsden Development Company II, LLC ("GDC"), and Trident Construction was enrolled as an eligible contractor under the policy effective January 16, 2017 to December 28, 2018. Tokio Marine has received a number of invoices regarding the repair work at The Gadsden, and this letter will notify Trident Construction that HCC has reviewed the invoices and has made its determination regarding which costs are covered under the HCC policy. HCC continues to reserve all rights under the policy.

The following explains HCC's coverage position.

RECEIVED

JUN 1 8 2021

TRIDENT CONSTRUCTION, LLC

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page **2** of **11**

## THE POLICY

HCC issued policy no. H16PC30763-00 (the "Policy") to GDC for the period December 28, 2016 to January 10, 2019. Trident Construction was enrolled with effective dates of January 16, 2017 to December 28, 2018. Limits of liability under the Policy are $2 million per occurrence, with a $2 million products-completed operations aggregate limit, and a $2 million general aggregate limit (other than products-completed operations).

Attached to this letter as an Appendix are certain provisions from the Policy that are applicable to the issues discussed below. HCC urges you to review the Policy in its entirety to be completely familiar with all of its terms, conditions, limitations, exclusions, and endorsements. We quote specific portions of the Policy here to bring them to your attention, but the quotation of particular provisions is not intended to be a waiver of HCC's right to rely on any applicable provision of any of the Policy. All of HCC's rights under the Policy and at law are reserved.

## THE CLAIM

Based on our review of the information regarding this claim, GDC hired Trident Construction as the general contractor to construct The Gadsden. After construction was completed, the owners of units 202, 215, 218, and 219 reported moisture intrusion into their units after a significant rainstorm that occurred on March 5, 2020. Since that time, information was developed that also indicated that prior weather events also caused moisture intrusion, including Hurricane Dorian on September 4-5, 2019 and a strong storm system that occurred on December 23-24, 2019.

Despite the strength of the weather events, allegations were made to the effect that the building's stucco cladding system was the proximate cause of the water intrusion. We understand that an investigation revealed that the cladding system caused water to intrude and run down the walls to the four units on the bottom floor. After the source of the moisture intrusion was identified, work was undertaken to replace portions of the exterior skin of the building at the four corners of the building.

Trident Construction has submitted invoices to HCC seeking payment for costs incurred in connection with both the repair work necessary to correct the faulty workmanship and to repair the damage to the units. The bulk of the costs relate to correcting the faulty workmanship. Included in the costs in the amount of $475,615.09,[1] are the costs associated with replacing the exterior building envelope, overhead, and profit.

Trident Construction states that the amounts do not include any cost related to stucco or storefront window repairs, which it explains were both noted in the envelope consultant's report as being the source of water infiltration

## COVERAGE POSITION AND RESERVATION OF RIGHTS

Liability policies, such as the Policy, provide coverage for property damages owed by the insured because of its activities. The Policy defines "property damage" as either "physical injury to tangible property, including all resulting loss of use of that property," or as "loss of use of tangible property that is not physically injured." The Policy defines "occurrence" as an "accident, including

---

[1]    HCC has received two cost summaries, and the total amount in one of the summaries is $473,753.32.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page **3** of **11**

continuous or repeated exposure to substantially the same general harmful conditions."  In addition, Section 38-61-70 of the South Carolina Code of Laws defines "occurrence" to also mean property damage resulting from faulty workmanship, exclusive of the faulty workmanship itself. HCC reserves the right to disclaim coverage for any amounts that do not constitute damages because of "property damage" or for any damage that was not caused by an "occurrence."

Additionally, while faulty workmanship can constitute an "occurrence," to be covered, it must result in damage to some other element to cause property damage.  The mere inclusion of a defective component, such as a defective building envelope, or the faulty application of the stucco in connection with the building envelope, does not constitute property damage unless that defective component or work results in physical injury to some other tangible property.  Stated another way, the Policy does not cover the costs of repairing or replacing any work that was defectively performed.  Here, it is the resulting damage to the units that is potentially covered.

Here, the majority of the work performed at The Gadsden involved repairing faulty workmanship. The costs to repair or replace any defective components and/or faulty work are thus not covered. Those excluded costs include the costs of removing and replacing the components of the building envelope, including the stucco, notwithstanding that the replacement of any defective work or components may be incidental to the repair of property damage covered by the policy.  In addition, costs for consulting work regarding determining how the building envelope was faulty and how it should be repaired are not covered under the policy.  In addition, costs for overhead and profit are not covered because such amounts do not meet the Policy's definition of "property damage."

The Policy also contains several exclusions which further limit coverage.

The Policy excludes coverage for "property damage" to the "covered project" if such "property damage" is not included within the "products-completed operations hazard."  The Policy defines "products-completed operations hazard" as all "property damage" arising out of GDC's product or work except work that has not yet been completed or abandoned.  And, "covered project" means the Gadsden project.  HCC continues to reserve its rights in this regard.

Under Exclusion I.A.2.m, no coverage is afforded for property damage to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in GDC's work, or a delay or failure by GDC or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.  "Impaired property" is property that cannot be used or is less useful because it incorporates work that is known or thought to be defective, deficient, inadequate or dangerous, if such property can be restored to use by the repair, replacement, adjustment or removal of GDC's work.  HCC reserves the right to assert that claimed damages are subject to this exclusion.

HCC has analyzed the invoices in conjunction with the coverage afforded under the Policy and has made the following determinations:

| Description of Costs | Amount | Coverage Position |
|---|---|---|
| **DRY OUT** | | |
| ServPro | $16,260.63 | Covered. |

Trident Construction Services, LLC
June 8, 2021
Page **4** of **11**

| Cleaning of Contents | $140.00 | Covered. |
|---|---|---|
| Lodging | $8,527.07 | Covered. |
| **GENERAL CONDITIONS** | | |
| Trident – Supervision | $82,112.42[2] | Potentially covered in part. The policy does not afford coverage for the costs of supervising the correction of Trident Construction's faulty workmanship. The policy would only afford coverage for the costs of supervision in connection with repairing "property damage." |
| Building Envelope Consultants | $51,779.29 | Not covered. This work appears to be related to correcting Trident Construction's faulty workmanship, which is not covered under the policy. |
| Rental Equipment | $20,086.59 | Potentially covered in part. The policy does not afford coverage for the costs of renting equipment in connection with correcting Trident Construction's faulty workmanship. The policy would only afford coverage for the costs of rental equipment rented to repair "property damage." |
| Temp Toilets | $429.45 | Not covered. This cost of renting temporary toilets are not damages because of "property damage." |
| **TEAR OUT** | | |
| Demolition | $67,922.71 | Potentially covered in part. The policy does not afford coverage for the costs of demolition in connection with |

---

[2]    This amount is $81,895.00 in one of the summaries.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page **5** of **11**

| | | |
|---|---|---|
| | | correcting Trident Construction's faulty workmanship. Costs for rip and tear to get to the damaged property are not covered in South Carolina. The policy would only afford coverage for the costs of demolition related to the repair "property damage." |
| Clean up | $13,727.14[3] | Potentially covered in part. The policy does not afford coverage for the costs of clean up in connection with correcting Trident Construction's faulty workmanship. The policy would only afford coverage for the costs of clean up related to repair "property damage." |
| Dumpsters | $2,535.50 | Potentially covered in part. |
| **PUT BACK UNITS** | | |
| City Permits | $1,000.00 | Not covered. The costs of obtaining permits to correct faulty workmanship do not constitute damages because of "property damage." |
| **Exterior** | | |
| Sheathing | $2,664.40 | Covered. |
| Waterproofing/Joint Sealants | $70,414.02 | Not covered. These costs are not damages because of "property damage." These costs appear to be for correcting faulty workmanship. |
| Concrete Placement | $5,955.00 | Covered. |

---

[3]    This amount is $81,895.00 in one of the summaries.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page **6** of **11**

| Terrace Pavers | $7,488.98[4] | Covered. |
|---|---|---|
| Masonry | $10,504.88 | Covered. |
| Copings/Downspouts/Sheet Metal | $15,977.60 | Not covered. Based on the information provided, these components were not damaged and appear to be costs because faulty workmanship. |
| Metal panels | $5,690.00 | Not covered. Based on the information provided, these components were not damaged and appear to be costs because faulty workmanship. |
| **Interior** | | |
| Drywall | $13,620.22[5] | Covered. |
| Trim | $3,438.14 | Covered. |
| Paint | $17,262.63 | Covered. |
| Flooring | $5,796.74 | Covered. |
| OVERHEAD – 7% | $29,633.34[6] | Not covered. Costs for overhead are not damages because of "property damage." |
| PROFIT – 5% | $22,648.34[7] | Not covered. Costs for profit are not damages because of "property damage." |

In an effort to resolve this matter, HCC agrees to pay the undisputed portion of this claim in the amount of $91,658.69. HCC remains willing to consider any additional information that Trident Construction has in support of the costs identified as potentially covered under the Policy.

HCC's evaluation is based on presently known facts and circumstances. HCC continues to reserve all its rights under the Policy, including all exclusions and other limitations on coverage,

---

[4]   This amount is $6,636.61 in one of the summaries.
[5]   This amount is $13,032.90 in one of the summaries.
[6]   This amount is $29,517.34 in one of the summaries.
[7]   This amount is $22,559.68 in one of the summaries.

Trident Construction Services, LLC
June 8, 2021
Page **7** of **11**

whether or not enumerated in this letter or in the attached appendix. HCC's reservation of rights includes, but is not limited to (1) the right to amend or supplement this reservation of rights; (2) the right to seek a judicial declaration as to its rights and obligations, if any, under any the Policy; (3) the right to withdraw from the investigation at any time; and (4) the right to decline indemnity.

HCC also reserves the right to seek reimbursement from Trident Construction for any indemnity-related payments incurred in connection with the claim that are not potentially covered by the Policy. HCC also reserves the right to seek contribution or indemnity from any other insurer for any indemnity paid.

HCC trusts that Trident Construction understands its coverage position. If Trident Construction has any questions or comments, please do not hesitate to contact us. Similarly, if Trident Construction believes that HCC is incorrect in any respect or wishes to bring any matter to its attention, please do not hesitate to contact us. HCC is prepared to consider additional information and reassess its position should the circumstances so warrant. In addition, if Trident Construction does not have a copy of the Policy, please let us know.

We look forward to receiving your response to the above settlement offer.

Very truly yours,

Kevin Auen
Lead Casualty Claims Adjuster
HCC Casualty Insurance Services, Inc.

ON BEHALF OF HOUSTON CASUALTY COMPANY

cc:    Gerald Myscofski (via email)

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page **8** of **11**

## APPENDIX

Houston Casualty Company issued policy no. H16PC30763-00, which affords coverage under CG 00 01 12 07 and provides, in pertinent part, as follows:

**SECTION I -COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" o "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

            (1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

            (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

      b.      This insurance applies to "bodily injury" and "property damage" only if:  *[Amended by Wrap Up Program Change Endorsement with General Aggregate Reinstatement endorsement]*

            (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project."

            (2)     The "bodily injury" or "property damage" occurs during the policy period, except for "bodily injury" or "property damage" included in the "products-completed operations hazard."; []

*   *   *

2.      **Exclusions**

      This insurance does not apply to:

Trident Construction Services, LLC
June 8, 2021
Page 9 of 11

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

a.   **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

m.   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

(2)   A delay or failure by your or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

i.   "Property Damage" to the "covered project".  However this exclusion does not apply to "property damage" included within the "products-completed operations hazard"

"Covered Project" means the project described in this endorsement.

* * *

**SECTION V – DEFINITIONS**

* * *

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**16.**   "Products-completed operations hazard":

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Trident Construction Services, LLC
June 8, 2021
Page 10 of 11

     **a.**    Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except: *[Modified by Amendment – Products-Completed Operations Hazard endorsement]*

         **(1)**    Products that are still in your physical possession; or

         **(2)**    Work that had not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

             **(a)**    When all of the work called for in your contract has been completed.

             **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

             **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

                 *   *   *

**17.**    "Property damage" means:

     **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

                 *   *   *

**22.**    "Your work":

     **a.**    Means:

         **(1)**    Work or operations performed by you or on your behalf; and

         **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

Trident Construction Services, LLC
June 8, 2021
Page **11** of **11**

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)**    The providing of or failure to provide warnings or instructions.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

# EXHIBIT C

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

COMMERCIAL GENERAL LIABILITY
Manuscript

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WRAP UP PROGRAM CHANGE ENDORSEMENT WITH GENERAL AGGREGATE REINSTATEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Project Name:**<br>The Gadsden |
| **Project Address:**<br>299 East Bay Street<br>Charleston, SC 29401 |
| **Project Description:**<br>Ground up construction of one concrete and steel 4-story building with 76 condo units. Including off-site staging and storage areas that are necessary or incidental to the covered project within 1,000 feet of the covered project. |
| **Project Sponsor:**<br>Gadsden Development Company 1 LLC |
| **Enrolled Professionals: EXCLUDED** |

1.  **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement,** part **b. (1)** and **(2)** are deleted and replaced by the following:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project."

    **(2)** The "bodily injury" or "property damage" occurs during the policy period, except for "bodily injury" or "property damage" included in the "products-completed operations hazard". For "bodily injury" or "property damage" included in the "products-completed operations hazard" the

    "bodily injury" or "property damage" occurs during the policy period or within the "extended products-completed operations period";

2.  The following is added to **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement** part **b.**:

    **(4)** And with respect to the "products-completed operations hazard" only, the dwelling unit you construct obtains a final certificate of occupancy from the appropriate local governing body during the term of the policy to which this endorsement forms a part.

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

3. **Section I – COVERAGES, Coverage A. BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions**, exclusions **j., k.** and **l.** are deleted.

4. The following exclusions are added to **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.**:

   i. "Property Damage" to the "covered project". However this exclusion does not apply to "property damage" included within the "products-completed operations hazard"

   ii. "Property damage" to personal property in the care custody or control of any insured.

5. **SECTION I – COVERAGES, COVERAGE B., PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **b.** is deleted in it's entirety and replaced with the following:

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed at the "covered project" during the policy period.

6. **Section II – WHO IS AN INSURED, 2**. is amended to include the following:

   **e.** Your "enrolled contractors" only while performing duties related to the "covered project".

7. **SECTION III – LIMITS OF INSURANCE, 2. and 3. Are deleted and replaced with the following:**
   2. The General Aggregate Limit is the most we will pay for the sum of:
      a. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
      b. Damages under Coverage **B**.

The General Aggregate Limit will be re-instated once at the midpoint of the policy period.

   3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-competed operations hazard". The Products-Completed Operations Aggregate Limit applies to the entire policy period including the "extended products-completed operations period" and does not reinstate.

8. The last paragraph of **SECTION III – LIMITS OF INSURANCE**, is deleted in its entirety.

9. "Covered Project" means the project described in this endorsement.

10. "Enrolled Contractors", mean a Named Insured as well as the project owner, general contractor construction manager, program manager, contractors and subcontractors of every tier, who, prior to the commencement of their work on the "covered project" have completed the appropriate enrollment documents for the "covered project". "Enrolled contractors" do not include any manufacturers or suppliers of materials or contractors or subcontractors engaged in any environmental or geotechnical work or any professionals, or surveyors unless their names are listed in the Schedule of this endorsement.

11. "Extended products – completed operations period" means the period of the time allowed by any applicable statute of limitation or repose, or ten (10) years, whichever is less, for claims or "suits" to be brought against the insured.

12. Cancellation, non-payment of additional premium at audit, or non-cooperation with the audit process, or failure to provide requested enrollment and 3rd party peer review documentation will result in the removal of the Extended Products-Completed Operations coverage.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

# EXHIBIT D



Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: +1 305 446 2646
Facsimile: +1 305 441 2374
www.clydeco.us
Alfred Warrington
alfred.warrington@clydeco.us

ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

November 23, 2021

**VIA E-MAIL ONLY**

Andrew K. Epting, Esq.
Epting & Rannik, LLC
46 A State St.
Charleston, SC 29401

Re:  The Gadsden, 299 East Bay St., Charleston, SC 29401 Project
     Named Insured:     Gadsden Development Company II, LLC
     Policy No.:        H16PC30763-00
     Effective Dates:   1/16/2017 to 12/28/2018
     Claim No.:         PWU-16-14787

Dear Mr. Epting:

As you are aware, we are coverage counsel for Houston Casualty Company ("HCC").  HCC has asked us to respond on its behalf to the point that you raised during the conference call on November 12, 2021.  During the call, you requested that HCC reconsider its coverage position regarding the claim submitted by your client, Trident Construction Services, LLC ("Trident").  Specifically, you stated that you disagreed with HCC's coverage position because of the "subcontractor exclusion" to exclusion I.A.2.l Damage To Your Work ("Exclusion l").  For the reasons explained below, HCC respectfully disagrees with your position.

## I.    FACTUAL BACKGROUND

**A.    The Policy**

HCC issued Policy No. H16PC30763-00 (the "Policy") to first named insured Gadsden Development Company II, LLC ("GDC"), effective January 16, 2017 to December 28, 2018. Trident is insured under the Policy.

The Policy provides that HCC will pay those sums that the insured (here Trident) becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence."  The Policy includes a Wrap Up Program Change Endorsement with General Aggregate Reinstatement (the "Wrap Up Change Endorsement").  As is relevant here, the Wrap Endorsement provides, "**Section I – COVERAGES, Coverage A. BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions**, exclusion … **l.** [is] deleted."

Clyde & Co US LLP is a Delaware limited liability partnership with offices in
Atlanta, Chicago, Los Angeles, Miami, New Jersey, New York, Orange County, San Francisco and Washington D.C.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.
#8552839v1<US1> - 11.23.2021 Letter to Andrew Epting (Counsel for Trident Const...docx



ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Mr. Andrew K. Epting
November 23, 2021
Page 2

## B.     The Claim

We understand that GDC hired Trident to serve as general contractor on The Gadsden Project. After construction was completed, certain unit owners reported moisture intrusion into their units after a rainstorm that occurred on March 5, 2020. We understand that other weather events may also have caused water intrusion, including Hurricane Dorian on September 4-5, 2019, and a strong storm system that occurred on December 23-24, 2019.

Allegations were made against the insureds to the effect that the stucco cladding system was the proximate cause of the water intrusion. We further understand that an investigation revealed that the cladding system caused water to intrude and run down the walls to the four units on the bottom floor. After the source of the moisture intrusion was identified, work was undertaken to replace portions of the exterior skin of the building at the four corners of the building.

Trident subsequently submitted invoices to HCC, seeking payment for costs allegedly incurred both in connection with correcting the faulty workmanship and the damage to the units. On June 8, 2021, HCC issued a reservation of rights letter to Trident, explaining, among other things, that while faulty workmanship can constitute an "occurrence," (i.e., an "accident") to be covered, it must result in damage to some other element to cause property damage. The mere inclusion of a defective component, such as a defective building envelope, or the faulty application of the stucco in connection with the building envelope, does not constitute property damage unless that defective component or work results in physical injury to some other tangible property. Stated another way, the Policy does not cover the costs of repairing or replacing any work that Trident or any subcontractor defectively completed.

HCC said it is the resulting damage to the units that is potentially covered, but noted that the majority of the work performed at The Gadsden Project involved repairing faulty workmanship. The costs to repair or replace any defective components and/or faulty work were thus not covered. Those excluded costs included the costs of removing and replacing the components of the building envelope, including the stucco, notwithstanding that the replacement of any defective work or components may have been incidental to the repair of property damage covered by the Policy. In addition, costs for consulting work regarding determining how the building envelope was faulty and how it should be repaired are also not covered under the Policy. Nor are costs for overhead and profit covered because such amounts do not meet the definition of "property damage." While HCC also reserved its rights with respect to the possible applicability of other provisions in the Policy, HCC did not contend that Exclusion l applied. (Again, the exclusion was deleted by the Wrap Up Change Endorsement.)

HCC's letter also identified which items it thought were payable as covered "property damage." Trident responded by e-mail on October 11, 2021, requesting that a check be issued for the "Covered" amounts (which totaled $91,658.69). With respect to certain remaining/disputed items,

- Trident conceded and acknowledged that the cost relating to the metal panels is considered non-reimbursable;



ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Mr. Andrew K. Epting
November 23, 2021
Page 3

- Trident requested reimbursement for the pro-rata share of the Supervision not associated with the correction of the faulty work, and based on its analysis the total work duration was 98 days and 25 days were deemed to be repairing "property damage" equating to $20,892;

- Trident requested reimbursement for the pro-rata share of the Building Envelope Consultant cost not associated with the correction of the faulty work, and based on its analysis it believed the cost of discovery should be reimbursable and cost of monitoring corrections should not be reimbursable and requested reimbursement in the amount of $22,204.12;

- Trident requested reimbursement for the pro-rata share of the rental equipment not associated with the costs of the faulty work, and requested reimbursement in the amount of $5124.13, related to the costs associated with the sheathing and waterproofing damaged by stucco;

- Trident requested reimbursement for the pro-rata share of the temporary toilet costs not associated with the faulty work but instead for the temporary toilets relating to the interior repairs in the amount of $107.36;

- Trident requested reimbursement for the pro-rata share of the demolition costs not associated with the faulty work but instead for the demolition to the interiors where drywall, insulation, trim, and flooring had to be removed so that they could be repaired and replaced in the amount of $29,585.86;

- Trident requested reimbursement for the pro-rata share of the clean-up costs not associated with the faulty work but instead for the clean-up relating to the interior repairs and the amount of $6863.75;

- Trident requested reimbursement for the pro-rata share of the dumpster cost not associated with the faulty work but instead for the dumpsters relating to the interior repairs in the amount of $633.88;

- Trident requested reimbursement for the pro-rata share of the city permits costs not associated with the faulty work but instead for the costs relating to the interior repairs and the amount of $648.88;

- Trident requested reimbursement in the amount of $70,414.02 for the waterproofing/joint sealants and asserts that the costs are not associated with the stucco, storefront windows, or decorative metal panels and pertains to the fluid applied waterproofing that had to be replaced because of damage that occurred as a result of the stucco. Trident further contends that the fluid applied membrane had to be replaced just like the drywall, insulation, and exterior sheathing;



ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Mr. Andrew K. Epting
November 23, 2021
Page 4

- Trident requested reimbursement in the amount of $15,977.60 for the copings/ downspouts/ sheet metal and asserts that the costs are not associated with the stucco, storefront windows, or decorative metal panels. Trident asserts that these items had to be removed so that the sheathing and waterproofing that were damaged could be repaired; and

- Trident requested reimbursement in the amount of $31,693 for Overhead and Profit, which it contends is relative to the costs that are undisputed and currently in dispute (approximately $264,110) and states that "the costs output for repairs was absent of any markup for overhead and profit."

Trident further stated that it would agree "to a full settlement in the amount of $295,803."

In an effort to work towards resolution of this claim, HCC and Trident scheduled a call for November 12, 2021, to discuss the above items. At the outset of the call, however, you announced (and notwithstanding Trident's previous acknowledgments that certain items were not covered) that Trident now demands payment of $475,615.09, the same, total amount Trident originally sought to recover from HCC, less the amount that HCC has already paid to Trident. You asserted that Trident is entitled to a full payment because Trident did not self-perform any of the work and the "subcontractor exception" to Exclusion l. Damage To Your Work applies.

## II.     HCC'S COVERAGE POSITION

### A.     The "Subcontractor Exclusion" to Exclusion I is Irrelevant

With respect, your contention is erroneous. Exclusion I was deleted from the Policy by the Wrap Change Endorsement. Neither the exclusion, nor its exception, are in the Policy.

Moreover, even if the exclusion and exception were in the Policy, the exception to the exclusion would not operate to afford additional coverage to Trident here. The issue here is not the applicability of an exclusion or exception, but whether the items identified above constitute "property damage" as that term is defined in the Policy.

The South Carolina Supreme Court has considered the same definition of "property damage" in the context of claims for construction defects. The Court has explained that there is a "difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage." *Crossmann Cmties. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011) (quoting *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889-90 (Fla. 2007)).

Recognizing the same distinction, the court in *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294 (11th Cir. 2012), expressly rejected the same argument you made during our call. The *Auchter* court held that the application of exclusion l and its subcontractor exception has no impact on the outcome of a case where the issue is whether the claims involve "property damage." The



ELECTRONICALLY FILED - 2022 Jul 15 3:31 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1003207

Mr. Andrew K. Epting
November 23, 2021
Page 5

court said that where the claims do not involve "property damage," there is no need to determine whether any policy exclusions or exceptions apply.  *Id.*, at 1310-1311.

Accordingly, even if Exclusion I and its exception were in the Policy, neither the exclusion nor the exception would impact the analysis here.  Again, the issue here is whether any of the remaining disputed items constitute covered "property damage."

HCC was hoping to resolve any outstanding issues with respect to the remaining disputed items during the call on November 11, 2021.  HCC hopes that Trident will now reconsider its position, and the parties can resume their discussions.

This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or of HCC's position as set forth in its prior reservation of rights letter. HCC continues to expressly reserve all of its rights under the Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

Please let us know if you have any questions regarding the above.

Yours sincerely,

Alfred C. Warrington
Janice Holmes*

*Licensed in Nebraska, North Carolina, and South Carolina