# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Trident Construction Services, LLC, | C/A. No. 2:22-2555-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Houston Casualty Company, Premier Exteriors, LLC and Graham-Hodge Associates, Inc., | |
| Defendants. | |

Before the Court is Defendant Houston Casualty Company ("HCC")'s motion to dismiss or in the alternative realign the parties and consolidate (Dkt. No. 9) and Plaintiff Trident Construction Services, LLC ("Trident")'s motion to remand (Dkt. No. 10). For the reasons set forth below, the Court grants HCC's motion and denies Trident's motion.

## I.    Background

Trident, a business organized under the laws of South Carolina and doing business in Charleston County, South Carolina, alleges it was the general contractor for a condominium development (the "Project") in Charleston. (Dkt. No. 1-1 at 4). Trident alleges it purchased project-specific insurance, policy no. H16PC30763-00, from HCC, a company organized under the laws of Texas and doing business in South Carolina. (*Id.*). Trident allegedly hired Defendants Premier Exteriors, LLC and Graham-Hodge Associations, Inc. (the "Subcontractors")—both South Carolina corporations with their principal places of business in South Carolina—as subcontractors to work on the Project. (*Id.* at 5).

Trident alleges it reported a loss for a plumbing leak on October 3, 2019 and that HCC eventually paid for the loss. (*Id.*).

Trident alleges that water intrusion at the Project was also discovered, and that Trident incurred "covered costs for repairing the buildings as did Premier and Graham-Hodge." (*Id.*). Trident alleges, however, that HCC claimed the Policy excluded coverage for said repairs and has only paid a portion of the money Trident is entitled to under the Policy. (*Id.* at 5-6).

Trident brings two claims: (1) Breach of Insurance Contract and Bad Faith as to HCC and (2) Declaratory Judgment as to all Defendants with respect to the Policy. (*Id.* at 6).

On July 15, 2022, Trident filed the instant action in state court. (Dkt. No. 1-1) (the "SC Action")

On August 3, 2022, Trident removed the SC Action based on diversity jurisdiction, arguing the parties should be realigned.

Previously, on June 28, 2022, HCC filed a declaratory judgment action in federal court against Trident seeking a declaration the Policy did not cover the disputed repairs to the Property. *Houston Casualty Co. v. Trident Construction Services, LLC*, No. 2:22-cv-02037-RMG (the "Federal Action").

HCC now moves to either dismiss this case in favor of the first-filed Federal Action or, in the alterative, to realign the parties and consolidate. (Dkt. No. 9). Trident opposes. (Dkt. No. 10).

Trident moves to remand the action. (Dkt Nos. 10, 19). HCC opposes. (Dkt. No. 15). Graham-Hodge supports Trident's motion to remand. (Dkt. No. 18); *see also* (Dkt. No. 22) (HCC response to Graham-Hodge filing).

The parties' respective motions are fully briefed and ripe for disposition.

**II.     Legal Standard**

Federal courts are courts of limited jurisdiction and, as such, may only hear and decide cases when they have been given the authority to do so by the Constitution and by federal statute. *In re Bulldog Trucking, Inc.*, 147 F. 3d 347, 352 (1998). The right to remove a case to federal court derives solely from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." However, "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction under [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

"The Supreme Court has construed these statutes to require all defendants in a case to join in or consent to removal." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013). "However, federal courts have recognized exceptions to this requirement, such as through a realignment of defendants as plaintiffs." *Fenwick Commons Homeowners Ass'n Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2019 WL 1760150, at *2 (D.S.C. Apr. 22, 2019); *see Wayne J. Griffin Elec., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 842983, at *6 (M.D.N.C. Mar. 4, 2014) (deeming defendants' lack of consent to removal immaterial after decision to realign); *see also Lott v. Scottsdale Ins. Co.*, 811 F.Supp.2d 1220, 1222 n.2 (E.D. Va. 2011) (noting defendants were not required to consent to removal given their realignment as plaintiffs for jurisdictional purposes).

Remand of a case to state court following removal is governed by 28 U.S.C. § 1447(c) and (d). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal

jurisdiction is placed on the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). "Because removal jurisdiction raises significant federalism concerns," courts "must strictly construe removal jurisdiction." *Id.* at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)). Thus, remand is necessary if federal jurisdiction is doubtful. *Id.* (citing *In re Business Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Cheshire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F. Supp. 1098, 1102 (D.S.C. 1990)).

**III.     Analysis**

HCC removed this case based on diversity jurisdiction. Because complete diversity of the parties is lacking, HCC asks this Court to realign the Subcontractors as Plaintiffs. HCC claims the Subcontractors' interests in this action are aligned with Trident's because the principal purpose of the SC Action is to determine the extent of Trident's insurance coverage under the Policy, Trident seeks no damages from the Subcontractors, and Trident and the Subcontractors' interests are aligned. *See* (Dkt. No. 9-1 at 6).  Should the Court grant HCC's motion, HCC correctly contends that consent from the Subcontractors for removal is not required and diversity will then exist.

The Fourth Circuit applies the two-step "principal purpose" test to determine whether to realign parties. *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.,* 48 F.3d 131, 133 (4th Cir. 1995). Under this test, "the court must determine the primary issue in the controversy." *Id.* Then, "the court should align the parties according to their positions with respect to the primary issue." *Id.* "In a declaratory judgment action involving an insurance company's policy coverage, the parties' interests are generally aligned based on whether they believe there is coverage of the damages that might underlie the claims for insurance." *Fenwick*, 2019 WL 1760150, at *3 (citing *Crout v. United Fin. Cas. Co.*, 2010 WL 2998500, at *2 (D.S.C. July 28, 2010)); *see also Marsh v.*

4

*Cincinnati Ins. Co.*, 2008 WL 4614289, at *2 (D.S.C. Oct. 15, 2008) (realigning defendants as plaintiffs where their positions regarding whether the court should find coverage under an insurance policy were the same). Thus, the Court must consider whether the Subcontractors have an interest similar to Trident's in having the Court declare that HCC's insurance Policy provides coverage for the repairs undertaken at the Project.

Applying the principal purpose test to the facts of this case, the Court finds that the Subcontractors should be realigned as Plaintiffs in the current action. Trident does not bring any claims against the Subcontractors and does not seek any relief from them. Rather, Trident asks the Court to issue a declaratory judgment that the Policy "provides coverage" for the repairs it undertook due to water intrusion. (Dkt. No. 1-1 at 6). *See Trehel Corp. v. National Fire and Marine Ins. Co.*, 2021 WL 5979675, (D.S.C. Dec. 17, 2021) (realigning the subcontractor defendants because they "have the same interest in the current action [as the general contractor] – establishing the policies issued to them by Insurer Defendants provided coverage for the claims …[and the general contractor] d[id] not bring any claims against Subcontractor Defendants in this Coverage Action and does not seek any relief from them").

Having realigned the parties, and thus finding it has subject matter jurisdiction over this action, the Court now addresses whether to (1) dismiss this action in favor of the Federal Action under the first-to-file rule or (2) consolidate this action with the Federal Action.

The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied–Gen. Nuclear Servs. v. Commonwealth Edison* Co., 675 F.2d 610, 611 n. 1 (4th Cir.1982) (citing *Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir.1944)). In general, "the first suit should have priority, absent the showing

5

of balance of convenience in favor of the second action." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594–95 (4th Cir.2004) (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.,* 502 F.2d 178, 180 n. 2 (4th Cir.1974)). When a case falls within the ambit of the first-to-file rule, courts generally will stay, dismiss, or transfer the second-filed case. *Harris v. McDonnell,* C/A No. 5:13-cv-00077, 2013 WL 5720355, at *3 (W.D.Va. Oct.18, 2013).

"The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources." *Id.* (citation omitted). "Application of the rule is discretionary, not mandatory." *Id.* (citation omitted). The Fourth Circuit "has no unyielding 'first-to-file' rule." *CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.,* 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir.1995) (unpublished) (citing *Carbide*, 140 F.2d at 49 ("[T]he pendency of a prior suit involving the same issues does not require the dismissal of a suit for declaratory judgment.")).

"The rule is not absolute and is not to be mechanically applied; ultimately, invoking the first-to-file rule is an equitable, case-by-case, discretionary determination." *Harris,* 2013 WL 5720355, at *3 (citation omitted). "Furthermore, exceptions to the rule are common 'when justice or expediency requires.'" *Id.* (citation omitted).

"Procedurally, the court first considers whether the two competing actions are substantively the same or sufficiently similar to come within the ambit of the first-to-file rule." *Id.* "If they do, the court then considers whether any exception to the rule should be applied." *Id.* (citation omitted). "To determine if there is sufficient similarity to bring the first-to-file rule into play, courts have considered three factors: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake." *Id.* (citations omitted). "The actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Id.* (citation omitted).

6

"One final factor courts use in considering the applicability of the first-to-file rule is 'whether the balance of convenience weighs in favor of allowing the second-filed action to proceed.'" *Id.* at *5 (citation omitted). In determining the balance of convenience, courts look to the same factors relevant to transfer of venue pursuant to 28 U.S.C. § 1404(a). *Nexsen Pruet, LLC v. Westport Ins. Corp.*, C/A No. 3:10-895-JFA, 2010 WL 3169378, at *2 (D.S.C. Aug.5, 2010) (citations omitted). These factors are: "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Landers v. Dawson Constr. Plant, Ltd.*, 201 F.3d 436 (4th Cir.1999) (unpublished table decision)). The moving party bears the burden of clearly establishing that these factors favor transfer. *Id.* (citation omitted).

The Court finds that the first to file rule applies here and dismisses the instant action without prejudice in favor of the Federal Action. The Federal Action was filed first and the parties to the Federal Action and this action are substantially similar. While Trident states that the Subcontractors are necessary parties, Trident articulates no reasoning supporting its position. Nor does Trident dispute that, if it so desired, it could move in the Federal Action pursuant to Fed. R. Civ. P. 19 to join the Subcontractors. Last, the issues in the Federal Action and SC Action are similar and, as HCC admits, Trident may bring its bad faith claim as a counterclaim in the Federal Action. *See* (Dkt. No. 9-1 at 4) ("[A]lthough the [SC Action] includes a bad faith claim, it is apparent that claim could be asserted as a counterclaim."); *Great W. Cas. Co. v. Packaging Corp. of Am.*, 444 F. Supp. 3d 664, 671 (M.D.N.C. 2020) (finding an insured's bad faith claim did not

render two actions sufficiently dissimilar to avoid application of the first-filed rule where the claim could be asserted as a counterclaim).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** HHC's motion to dismiss (Dkt. No. 9), dismisses this action without prejudice pursuant to the first-to-file rule, and **DENIES** Trident's motion to remand (Dkt No. 10).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

December 14, 2022
Charleston, South Carolina